UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
04 JUN -7 AM 8:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| AVOCENT HUNTSVILLE CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| vs. | | Civil Action No. CV-03-S-2875-NE |
| CLEARCUBE TECHNOLOGY, INC., | | ENTERED |
| Defendant. | | JUN - 7 2004 |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

In this patent infringement action, plaintiff seeks a protective order to prohibit questioning by defendant about certain designated topics at the deposition of its 30(b)(6) representative.[1] Specifically, plaintiff objects to the following proposed deposition topics:

1.  *The basis for Avocent's claims against ClearCube for patent infringement* of the '997 patent as alleged in Count One of the

---

[1] Federal Rule of Civil Procedure 30(b)(6) provides:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

Complaint, including any general and element-by-element reading of the asserted claims on ClearCube accused products, the identification of all ClearCube accused products alleged to infringe, *and any prefiling investigation* performed by Avocent prior to filing this action.

2. *The basis for Avocent's claims against ClearCube for patent infringement* of the '919 patent as alleged in Count Two of the Complaint, including any general and element-by-element reading of the asserted claims on ClearCube accused products, the identification of all ClearCube accused products alleged to infringe, *and any prefiling investigation* performed by Avocent prior to filing this action.

3. *The basis for Avocent's claims against ClearCube that any alleged patent infringement* of the '997 patent as alleged in Section "D" of Avocent's Prayer for Relief in the Complaint is *willful* and intentional, including, but not limited to, all facts that Avocent contends support its allegations.

4. *The basis for Avocent's claims against ClearCube that any alleged patent infringement* of the '919 patent as alleged in Section "D" of Avocent's Prayer for Relief in the Complaint is *willful* and intentional, including, but not limited to, all facts that Avocent contends support its allegations.

8. *All* facts and *allegations* set forth in Avocent's Complaint.

9. *All actual damage* that Avocent has allegedly sustained as a result of ClearCube's alleged infringing activities.

10. All facts regarding *a reasonable royalty as a measure of damages* to compensate Avocent for ClearCube's *allegedly infringing activities*.

16. The facts and documents that Avocent asserts evidence or establish *that the patents-in-suit are not obvious* in view of the prior art.

20. The interrogatories answered, and requested to be answered, in this case by Avocent. *The basis for which Avocent contends the patents-in-suit infringe and any associated study* made by or on behalf of Avocent or made by some other person, firm, or corporation to which Avocent referred in selecting the products which Avocent contends infringe the patents-in-suit.

23. Testimony and documents which evidence or relate to *cost benefit analyses or studies conducted to assess the cost of asserting the patents-in-suit.*

24. The scientific basis, criteria, standards, protocols, practices, and procedures used by Avocent *to identify allegedly infringing products.*

33. The scientific basis, criteria, methods, standards, protocol, policies and procedures utilized *to determine whether ClearCube accused products infringe the patents-in-suit.*[2]

## I. CONTENTION INTERROGATORIES ARE THE APPROPRIATE DISCOVERY DEVICE

Plaintiff asserts that defendant's proposed topics seek the legal foundation behind its claims, not merely fact testimony. Thus, plaintiff proffers that the information defendant seeks should be obtained through the use of contention interrogatories instead of deposition testimony. Plaintiff also argues that defendant's requests for information regarding plaintiff's pre-filing investigations into defendant's alleged patent infringement are barred by the attorney-client privilege and/or the

---

[2]Doc. no. 32 (plaintiff's motion for a protective order), at 3-4 (emphasis in original). *See also id.* at Exhibit 2 (deposition notice). The italicized language indicates which portions of the topics plaintiff finds objectionable.

attorney work product doctrine.

Plaintiff does not contest the relevancy of defendant's proposed deposition topics. Indeed, defendant's requests are relevant to plaintiff's claims, and plaintiff is willing to provide the requested information in a form other than deposition testimony. Plaintiff cites *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,* 134 F.R.D. 275 (N.D. Cal. 1991), to support its argument that contention interrogatories are the appropriate discovery device. In *McCormick,* also a patent infringement case, the plaintiff moved for a protective order to prohibit the defendant from taking 30(b)(6) testimony "for the purpose of detailing the bases for the contentions made and the positions taken by [the plaintiff]." *Id.* at 285. The district court set forth the following test for deciding which of the available discovery devices should be employed: "*i.e.,* which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this?" *Id.* at 286.

> First, we are concerned that in a case like this, no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party like MMI (or Teledyne).
>
> Secondly, we are concerned about asking a non-lawyer to undertake this kind of task. In a patent case like this, the bases for contentions do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident. In other words, to set forth the bases for contentions in this

case, it is not enough to describe real world facts and events, even in considerable detail. Rather, determining what the bases for contentions are in this environment involves complex judgments about the relationship between at least three kinds of things: (1) evidence/facts/events in the real world (outside litigation), (2) "claims" as particularly set forth in the patent in issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions. A non-lawyer deponent might have great knowledge about the products in issue here, but be quite ill-equipped to reason reliably about the legal implications of the relationship between those products, or their components, and the various claims of the patent in suit or of other patents or prior art. Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law. Understanding that dynamic, and describing the relationships that serve as the basis for a given parties' contentions, is something best done by patent lawyers, and best done after at least most other discovery has been completed. After all, in cases like these, a substantial part of "the bases for contentions" really consists of *quasi-legal argument.*

*Id.* at 286-87 (emphasis in original). The court noted that drafting and responding to contention interrogatories is a difficult, time-consuming task, but concluded that, in a complicated patent dispute, the effort is justified "because by doing so counsel can set the case up for serious settlement negotiations or for a streamlined and rational trial." *Id.* at 287.

"Whether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case." *Exxon Research and Engineering Co. v. United States,* 44 Fed. Cl. 597, 601 (1999) (citing *United States. v. Taylor,* 166 F.R.D. 356, 362 n.7 (M.D. N.C. 1996)). However, courts considering the issue *in*

*patent infringement cases* generally favor the use of contention interrogatories. *See e.g., Smithkline Beecham Corp. v. Apotex Corp.,* No. 99-CV-4304, 00-CV-4888, 01-CV-0159, 01-CV-2169, 99-CV-2926, 00-CV-5953, 02-CV-1484, 00-CV-1393, 00-CV-6464, 01-CV-2602, 01-CV-1027, 01-CV-3364, 01-CV-2981, 03-CV-3365, 2004 WL 739959 (E.D. Pa. March 23, 2004); *Exxon Research,* 44 Fed. Cl. at 601-603; *McCormick,* 134 F.R.D. at 285-288.

This court is persuaded by the analysis set forth in *McCormick*. In this case, defendant seeks information regarding the bases of plaintiff's claims, the allegations in plaintiff's complaint, the damages plaintiff allegedly has suffered, the elements of plaintiff's infringement claims, any studies used in plaintiff's investigation, and the processes by which plaintiff determines whether a patent is infringing. It is unrealistic to expect one person, particularly a non-lawyer, to testify about these complicated matters in which factual background and legal analysis are so heavily intertwined. Contention interrogatories addressing defendant's requests "would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court." *McCormick,* 134 F.R.D. at 286. Accordingly, a protective order will be entered preventing defendant from obtaining deposition testimony on proposed topics 1, 2, 3, 4, 8, 9, 10, 16, 20, 23, 24, and 33. Defendant will be instructed to obtain the requested information through

contention interrogatories.

## II. THE DISCOVERY SOUGHT IS NOT PRIVILEGED

Plaintiff also argues that defendant may not seek any discovery regarding its prefiling investigations, because that information is protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiff's argument on this point is unconvincing.

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Proceedings,* 899 F.2d 1039, 1042 (11th Cir. 1990). The court does not see how plaintiff's *actions* in investigating defendant's alleged infringement can constitute confidential communications between attorney and client. Indeed, much of the investigation likely did not involve attorneys. Accordingly, the court will not hand down a blanket ruling that the attorney-client privilege protects plaintiff's pre-filing investigations from discovery. Thus, plaintiff must disclose all information regarding the actions it took to investigate defendant's alleged infringement before it filed this lawsuit. Even so, to the extent that certain aspects of plaintiff's investigation may actually have involved *confidential communications between plaintiff and its attorney,* plaintiff need not disclose them.[3]

---

[3]The court will not look favorably upon any refusal by plaintiff to disclose information on privilege grounds, unless the information *truly* derives from a *confidential* communication between

The attorney work product doctrine is embodied in Federal Rule of Civil Procedure 26(b)(3), which provides in pertinent part:

> **(3) Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and *prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.* In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation* [emphasis supplied].

Plaintiff states in a conclusory fashion that its pre-filing investigations were "by definition" conducted "in anticipation of litigation."[4] Indeed, there can be no doubt that plaintiff conducted a pre-filing investigation into defendant's allegedly infringing activities *because* it contemplated filing this lawsuit. Nonetheless, defendant has a substantial need for the information in order to determine whether plaintiff had a good-faith basis for filing suit. *See, e.g., Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004) (holding that Rule 11 requires a plaintiff in a patent action to conduct a reasonable investigation before filing suit, and stating, "Jergens contends

---

it and its attorney.

[4] Doc. no. 32 (plaintiff's motion for a protective order), at 7.

that *only during discovery* did it learn of Q-Pharma's failure to conduct a reasonable pre-filing investigation") (emphasis supplied); *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement."). Further, defendant would not be able to obtain information about plaintiff's pre-filing investigations from any source other than plaintiff.

Accordingly, plaintiff will be required to disclose, either through a response to defendant's contention interrogatory, or through deposition testimony,[5] facts related to its pre-filing investigation. Only *factual* information — what plaintiff actually did to investigate, what steps it took, etc. — may be obtained. In accordance with Federal Rule of Civil Procedure 26(b)(3), plaintiff will not be required to disclose "the mental impressions, conclusions, opinions, or legal theories of [its] attorney or other representative . . . concerning the litigation." Fed. R. Civ. P. 26(b)(3). An appropriate order will be entered contemporaneously herewith.

DONE this 7th day of June, 2004.

---

[5]Information about plaintiff's pre-filing investigations is not so heavily grounded in legal conclusions that defendant should be *required* to seek it through a contention interrogatory, rather than a deposition. Indeed, the facts surrounding plaintiff's pre-filing investigation certainly should be "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

_____
United States District Judge