IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

FILED
04 SEP -3 PM 3:22

AVOCENT HUNTSVILLE CORP. §
*Plaintiff* §
§ CIVIL ACTION NO. 03-CV-S-2875-NE
v. §
§ JURY TRIAL DEMANDED
CLEARCUBE TECHNOLOGY, INC., §
*Defendant* §

**FIRST AMENDED ANSWER OF DEFENDANT CLEARCUBE TECHNOLOGY, INC., AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendant and Counter-Claimant ClearCube Technology Corporation ("ClearCube"), states the following as its first amended answer to Plaintiff and Counter-Defendant Avocent Huntsville Corporation's ("Avocent") Complaint:

**ANSWER**

1. ClearCube admits that Avocent is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in the Huntsville, Alabama. Except as expressly admitted, ClearCube otherwise denies each and every allegation in Paragraph 1.

2. ClearCube is without information sufficient to form an opinion or belief as to the truth of the allegation in Paragraph 2, and therefore denies the same.

3. ClearCube admits that ClearCube Corporation is organized and exists under the laws of the State of Texas and has a principal place of business located in Austin, Texas. Except as expressly admitted, ClearCube otherwise denies each and every allegation in Paragraph 3.

4. ClearCube admits that it does business as ClearCube Technology Corporation and is a Texas corporation with its principal place of business in Austin, Texas. ClearCube admits that



61

it is in the business of developing, manufacturing, marketing, and distributing, directly or through its agents or affiliates, computer software and hardware,. Except as expressly admitted, ClearCube otherwise denies each and every allegation in Paragraph 4.

5. ClearCube admits that the Complaint purports to state claims arising under the Patent and Trademark Act, 35 U.S.C. § 1 *et seq.*, but denies it has committed acts of infringement and denies that there is any basis for Avocent's Complaint. ClearCube admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338. Except as expressly admitted, ClearCube otherwise denies each and every allegation in Paragraph 5.

6. ClearCube admits that venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b) and (c) and 1400(b). However, ClearCube denies it has committed acts of infringement and denies that there is any basis for Avocent's Complaint. Except as expressly admitted, ClearCube otherwise denies each and every allegation in Paragraph 6.

7. ClearCube admits that it has transacted business within the State of Alabama. ClearCube further admits that venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b) and (c) and 1400(b). Except as expressly admitted, ClearCube otherwise denies each and every allegation in Paragraph 7.

8. ClearCube realleges and incorporates by reference the responses to Paragraphs 1 through 7 above.

9. ClearCube admits that U.S. Patent No. 6,150,997, as attached to Avocent's Complaint, indicates on its face that it issued on November 21, 2000 to Robert R. Asprey and that Cybex Computer Products Corp. from Huntsville, Alabama is identified as the assignee. ClearCube lacks information sufficient to form an opinion or belief as to Avocent's alleged ownership of the "entire right title and interest" to each of said patents, and therefore denies the

same. ClearCube is without information sufficient to form an opinion or belief as to the truth of any other allegation in Paragraph 9, and therefore denies the same.

10. ClearCube denies the allegations in Paragraph 10. Avocent's allegations fail to notify ClearCube of Avocent's infringement claims because such allegations fail to identify any ClearCube products accused of infringement.

11. ClearCube denies the allegations in Paragraph 11.

12. ClearCube denies the allegations in Paragraph 12.

13. ClearCube realleges and incorporates by reference the responses to Paragraphs 1 through 12 above.

14. ClearCube admits that U.S. Patent No. 6,184,919, as attached to Avocent's Complaint, indicates on its face that it issued on February 6, 2001 to Robert R. Asprey, Phillip M. Kirshtein and Thomas V. Lusk. ClearCube lacks information sufficient to form an opinion or belief as to Avocent's alleged ownership of the "entire right title and interest" to each of said patents, and therefore denies the same.

15. ClearCube denies the allegations in Paragraph 15. Avocent's allegations fail to notify ClearCube of Avocent's infringement claims because such allegations fail to identify any ClearCube products accused of infringement.

16. ClearCube denies the allegations in Paragraph 16.

17. ClearCube denies the allegations in Paragraph 17.

18. Avocent's Prayer For Relief states legal conclusions as to which no response is required, but to the extent that they are deemed factual, they are denied.

19. Each allegation of the Complaint not specifically admitted is denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Invalidity of the '997 Patent)

20. Defendant hereby incorporates by reference Paragraphs 1–19 above in their entirety.

21. Avocent's '997 patent is invalid, in whole or in part, as not satisfying the conditions of patentability set forth in Title 35 of the United States Code, including without limitation, Section Nos. 102, 103, and 112, and Avocent's claims for relief are thus barred in whole or in part.

### Second Affirmative Defense
### (Invalidity of the '919 Patent)

22. Defendant hereby incorporates by reference Paragraphs 1–21 above in their entirety.

23. Avocent's '919 patent is invalid, in whole or in part, as not satisfying the conditions of patentability set forth in Title 35 of the United States Code, including without limitation, Section Nos. 101, 102, 103, and 112, and Avocent's claims for relief are thus barred in whole or in part.

### Third Affirmative Defense
### (Prosecution History Estoppel)

24. Defendant hereby incorporates by reference Paragraphs 1–23 above in their entirety.

25. The claims of the '997 and '919 patents are so limited by the prior art, by their terms, and/or by representations made to the United States Patent and Trademark Office during prosecution of the applications which resulted in those patents, that none of the claims of those patents are infringed by Defendant.

### Fourth Affirmative Defense
### (Unenforceability of the '997 Patent Based on Inequitable Conduct)

26. Defendant hereby incorporates by reference Paragraphs 1–25 above in their entirety.

27. Upon information and belief, the '997 Patent is unenforceable based on a failure to comply with Title 37 of the Code of Federal Regulations §1.56 because the inventor or the prosecuting attorney of the '997 Patent application ("'997 Applicants") intentionally did not disclose to the United States Patent and Trademark Office ("USPTO") all information known to them to be material to the patentability of the '997 Patent. More specifically, the '997 Applicants failed to disclose to the USPTO specific information about products for extending video signals several hundred feet which were sold or offered for sale prior to the filing date of the '997 Patent. Those products include the PC Extender Plus which was offered for sale at least as early as November 1991 (Defendant's Exhibit ("DX") 20), the PC Expander which was offered for sale at least as early as November 1991 (A4187) and the Extender which was offered for sale at least as early as May 1992 (DX 38). Each of those products was sold or offered for sale by Cybex Corporation, a predecessor of Avocent. Each of those products was described as including VGA support and transmission of signal 250 feet to 600 feet. The '997 Applicants failed to provide specific information about those sales to the USPTO.

28. Based upon the foregoing, the '997 Patent is unenforceable due to the '997 Applicants knowingly failing to disclose material art, including at least the sales described in Paragraph 27, with the intent to deceive the USPTO into issuing the '997 Patent.

29. Based on Avocent's inequitable conduct, this case is an exceptional case.

**<u>Fifth Affirmative Defense</u>**
**(Unenforceability of the '919 Patent based on Inequitable Conduct)**

30. Defendant hereby incorporates by reference Paragraphs 1–29 above in their entirety.

31. Upon information and belief, the '919 Patent is unenforceable based on inequitable conduct. Mr. Clodfelter, the patent agent who prosecuted the '919 Patent application, failed to

comply with Title 37 of the Code of Federal Regulations §1.56 because he intentionally did not disclose to the "USPTO" all information material to the patentability of the '919 Patent known to at least him and possibly to the named inventors of the '919 Patent.

32. The application that became the '919 Patent was filed on June 3, 1996. It contains in its disclosure a recitation that it is a "continuation-in-part of application Ser. No. 08/177,442, filed Jan. 5, 1994." (That application is referred to herein as the '442 application) That '442 application, in turn, recites that it is a "continuation-in-part of application Serial No. 07/912,689, filed on July 13, 1992, now U.S. patent No. 5,276,404 ......" U.S. patent No. 5,276,404 (the '404 patent) issued on Jan 4, 1994.

33. The '442 application went abandoned in 1997, after an effort by the patent solicitor to change the official filing date accorded to the application from January 5 to January 4, 1994. As a result, the '442 application is not entitled to rely on the '404 patent in any way and the '404 patent cannot be a parent of the '442 application.

34. The '919 Patent states that certain information was known to the art as follows:

> "There are many occasions where it is necessary to regenerate or otherwise restore computer video signals to their transmitted amplitudes. In one such instance, when analog VGA video and keyboard signals are routed between one of a plurality of computers and a single monitor and keyboard by switching equipment, such as the Commander module manufactured by Cybex Corporation of Huntsville, Ala., analog VGA video levels routed thereby may be reduced and high frequency components of a signal attenuated by switching circuitry inside the Commander module."

35. In an Office Action dated October 28, 1998, the Patent Examiner in charge of the '919 Patent application, among other things, rejected pending claim 20 (which later became claim 16 of the '919 Patent). That action was made Final. In making that rejection, the Examiner went to some length in explaining that he was combining what was clearly disclosed in the primary reference (Gunnarson et al, US Patent 5,283,789) with an additional fact of which he was taking "official notice." Taking "official notice" essentially means that the Examiner was taking the position that a certain fact did not need providing. The Examiner took "official notice" that "it is well known in the art to use a video switch to select a video source for transmission."

36. After receiving this Final action, Mr. Clodfelter filed a response addressing all points of the rejection except the "official notice" and then, a few days later, filed a Supplemental Amendment to address the "official notice" issue. In this supplemental document, he first amends the specification to delete all reference to any parentage earlier than the '404 patent. However, he did not amend the recitation in the '919 Patent application of a January 4 filing date for the '442 application. That was after the Patent Office had already ruled against the request to give that filing date to the '442 application. That was a material misrepresentation of the official record, which showed the filing date to be January 5.

37. In the Supplemental Amendment, Mr. Clodfelter, on behalf of the inventors, states, "Applicants submit that the Examiner's assertion of "Official Notice" is taken from Applicant's own patent, which is a parent to the instant application, and thus is improper. Accordingly, Applicants request the Examiner produce a reference prior to Applicants 1992 filing date that supports the "Official Notice" statement ......." The reference to "Applicant's own patent" is to the '404 Patent.

38. On or about two weeks after that Supplemental Amendment, the Examiner allowed all the claims of the pending '919 Patent application, explaining that he had withdrawn the rejection of claim 20. In his reasons for allowance he states,

> "With regard to claim 20, the prior art of record does not disclose or make obvious a computer video signal communications system for selectively coupling sets of R, G, B computer signals from one of a plurality of computers to a separately located color monitor through twisted pairs of conductors ...."

Upon information and belief, the Examiner changed his position based upon the misrepresentation made by Mr. Clodfelter in the Supplemental Amendment that the "official notice" was improper because it is taken from "Applicant's own patent, which is a parent to the instant application."

39. After all the claims had been allowed, Mr. Clodfelter submitted yet another amendment. In that amendment, he requested that the filing date of the parent '442 application be amended to read January 5, 1994 and that the reference to the '442 application being a C-I-P of the '404 Patent be deleted. He also submitted a supplemental declaration of the inventors that removes reference to the '404 Patent. Mr. Clodfelter did not advise the Examiner that these amendments removed his earlier basis for arguing the impropriety of the Examiner's "official notice."

40. Upon information and belief, the '919 Patent is also unenforceable because the inventors or the prosecuting agent of the '919 Patent application ("'919 Applicants") intentionally did not disclose to the United States Patent and Trademark Office ("USPTO") specific information about switching products which were combined with products for extending video signals several hundred feet which were sold or offered for sale prior to the filing date of the '919 Patent. Extension products include the PC Extender Plus which was offered for sale at

least as early as November 1991 (DX 20), the PC Expander which was offered for sale at least as early as November 1991 (A4187) and the Extender which was offered for sale at least as early as May 1992 (DX 38). Each of those products was described as including VGA support and transmission of signal 250 feet to 600 feet. Switching products which were offered for sale were the Autoboot Commander 4XP (A4193) and the Autoboot Commander (DX 21). Each of those products was sold or offered for sale by Cybex Corporation, a predecessor of Avocent. At least inventor Mr. Asprey was aware the Autoboot Commander was being combined with extension products prior to the filing date of the '919 Patent, but he never provided specific information about those combinations to the USPTO.

41. Based on the foregoing, the '919 Patent is unenforceable based on inequitable conduct due to the '919 Applicants knowingly failing to disclose material information about the chain of pendency of the '919 Patent application and the combination of extension products switching products with the intent to deceive the USPTO into issuing the '919 Patent.

42. Based on Avocent's inequitable conduct, this case is an exceptional case.

## COUNTERCLAIMS

43. Defendant and Counter-Claimant ClearCube Technology Corporation asserts upon information and belief the following counterclaims against Avocent. Defendant hereby incorporates by reference Paragraphs 1–42 above in their entirety.

44. In its Counterclaims, ClearCube seeks declarations of invalidity, non-infringement, and unenforceability as to each of the patents in suit. As such, jurisdiction is proper pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, under federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, and as arising under the Patent Laws of the United States, Title 35, United States Code.

45. Avocent claims an ownership interest in the patents in suit and has asserted that ClearCube has infringed, induced infringement, and/or contributorily infringed United States Letters Patent Nos. 6,150,997 and 6,184,919.

46. This Court has personal jurisdiction over Avocent.

47. Venue in this district is proper with regard to these counterclaims under 28 U.S.C. §§ 1391 and 1400.

**FIRST COUNTERCLAIM FOR RELIEF**
**Counterclaim for Declaratory Judgment of Non-Infringement and Invalidity of the '997 Patent**

48. ClearCube realleges and incorporates by reference Paragraphs 1 through 47, above.

49. As a result of the charges of infringement against ClearCube, an actual controversy exists as to non-infringement and invalidity of the '997 Patent.

50. ClearCube has not infringed, and is not now infringing, the '997 Patent. Further, ClearCube has not contributed to the infringement of said patent, nor induced others to infringe said patent.

51. The '997 Patent is invalid and void under Title 35, United States Code, including without limitation §§ 102, 103, and 112.

**SECOND COUNTERCLAIM FOR RELIEF**
**Counterclaim for Declaratory Judgment of Non-Infringement and Invalidity of the '919 Patent**

52. ClearCube realleges and incorporates by reference Paragraphs 1 through 51, above.

53. As a result of the charges of infringement against ClearCube, an actual controversy exists as to non-infringement and invalidity of the '919 Patent.

54. ClearCube has not infringed, and is not now infringing, the '919 Patent. Further, ClearCube has not contributed to the infringement of said patent, nor induced others to infringe said patent.

55. The '919 Patent is invalid and void under Title 35, United States Code, including without limitation, §§ 102, 103, and 112.

## THIRD COUNTERCLAIM FOR RELIEF
### Declaration of Unenforceability of the '997 Patent Based on Inequitable Conduct

56. Defendant hereby incorporates by reference Paragraphs 1- 55 above in their entirety.

57. As a result of the charges of infringement against ClearCube, an actual controversy exists as to non-infringement and invalidity of the patents in suit.

58. Upon information and belief, the '997 Patent is unenforceable based on a failure to comply with Title 37 of the Code of Federal Regulations §1.56 because the inventor and the prosecuting attorney of the '997 Patent application ("'997 Applicants") intentionally did not disclose to the United States Patent and Trademark Office ("USPTO") all information known to them to be material to the patentability of the '997 Patent. More specifically, the '997 Applicants failed to disclose to the USPTO specific information about products for extending video signals several hundred feet which were sold or offered for sale prior to the filing date of the '997 Patent. Those products include the PC Extender Plus which was offered for sale at least as early as November 1991 (DX 20), the PC Expander which was offered for sale at least as early as November 1991 (A4187) and the Extender which was offered for sale at least as early as May 1992 (DX 38). Each of those products was sold or offered for sale by Cybex Corporation, a predecessor of Avocent. Each of those products was described as including VGA support and transmission of signal 250 feet to 600 feet. The '997 Applicants failed to ever provide specific information about those sales to the USPTO.

59. Based upon the foregoing, the '997 Patent is unenforceable based on inequitable conduct due to the '997 Applicants knowingly failing to disclose material art, including at least the sales described in Paragraph 29, with the intent to deceive the USPTO into issuing the '997 Patent.

60. Based on Avocent's inequitable conduct, this counterclaim presents exceptional circumstances within the meaning of 35 U.S.C. § 285 and ClearCube is thus entitled to an award of its reasonable attorneys' fees.

## FOURTH COUNTERCLAIM FOR RELIEF
### Declaration of Unenforceability of the '919 Patent Based on Inequitable Conduct

61. Defendant hereby incorporates by reference Paragraphs 1- 60 above in their entirety.

62. As a result of the charges of infringement against ClearCube, an actual controversy exists as to non-infringement and invalidity of the patents in suit.

63. Upon information and belief, the '919 Patent is unenforceable based on inequitable conduct. Mr. Clodfelter, the patent agent who prosecuted the '919 Patent application, failed to comply with Title 37 of the Code of Federal Regulations §1.56 because he intentionally did not disclose to the "USPTO" all information material to the patentability of the '919 Patent known to at least him and possibly to the named inventors of the '919 Patent.

64. The application that became the '919 Patent was filed on June 3, 1996. It contains in its disclosure a recitation that it is a "continuation-in-part of application Ser. No. 08/177,442, filed Jan. 5, 1994." (That application is referred to herein as the '442 application) That '442 application, in turn, recites that it is a "continuation-in-part of application Serial No. 07/912,689, filed on July 13, 1992, now U.S. patent No. 5,276,404 ......" U.S. patent No. 5,276,404 (the '404 patent) issued on Jan 4, 1994.

65. The '442 application went abandoned in 1997, after an effort by the patent solicitor to change the official filing date accorded to the application from January 5 to January 4, 1994. As a result, the '442 application is not entitled to rely on the '404 patent in any way and the '404 patent cannot be a parent of the '442 application.

66. The '919 Patent states that certain information was known to the art as follows:

67. "There are many occasions where it is necessary to regenerate or otherwise restore computer video signals to their transmitted amplitudes. In one such instance, when analog VGA video and keyboard signals are routed between one of a plurality of computers and a single monitor and keyboard by switching equipment, such as the Commander module manufactured by Cybex Corporation of Huntsville, Ala., analog VGA video levels routed thereby may be reduced and high frequency components of a signal attenuated by switching circuitry inside the Commander module."

68. In an Office Action dated October 28, 1998, the Patent Examiner in charge of the '919 Patent application, among other things, rejected pending claim 20 (which later became claim 16 of the '919 Patent). That action was made Final. In making that rejection, the Examiner went to some length in explaining that he was combining what was clearly disclosed in the primary reference (Gunnarson et al, US Patent 5,283,789) with an additional fact of which he was taking "official notice." Taking "official notice" essentially means that the Examiner was taking the position that a certain fact did not need providing. The Examiner took "official notice" that "it is well known in the art to use a video switch to select a video source for transmission."

69. After receiving this Final action, Mr. Clodfelter filed a response addressing all points of the rejection except the "official notice" and then, a few days later, filed a Supplemental Amendment to address the "official notice" issue. In this supplemental document,

he first amends the specification to delete all reference to any parentage earlier than the '404 patent. However, he did not amend the recitation in the '919 Patent application of a January 4 filing date for the '442 application. That was after the Patent Office had already ruled against the request to give that filing date to the '442 application. That was a material misrepresentation of the official record, which showed the filing date to be January 5.

70. In the Supplemental Amendment, Mr. Clodfelter, on behalf of the inventors, states, "Applicants submit that the Examiner's assertion of "Official Notice" is taken from Applicant's own patent, which is a parent to the instant application, and thus is improper. Accordingly, Applicants request the Examiner produce a reference prior to Applicants 1992 filing date that supports the "Official Notice" statement ......." The reference to "Applicant's own patent" is to the '404 Patent.

71. On or about two weeks after that Supplemental Amendment, the Examiner allowed all the claims of the pending '919 Patent application, explaining that he had withdrawn the rejection of claim 20. In his reasons for allowance he states,

72. "With regard to claim 20, the prior art of record does not disclose or make obvious a computer video signal communications system for selectively coupling sets of R, G, B computer signals from one of a plurality of computers to a separately located color monitor through twisted pairs of conductors ...."

73. Upon information and belief, the Examiner changed his position based upon the misrepresentation made by Mr. Clodfelter in the Supplemental Amendment that the "official notice" was improper because it is taken from "Applicant's own patent, which is a parent to the instant application."

74. After all the claims had been allowed, Mr. Clodfelter submitted yet another amendment. In that amendment, he requested that the filing date of the parent '442 application

be amended to read January 5, 1994 and that the reference to the '442 application being a C-I-P of the '404 Patent be deleted. He also submitted a supplemental declaration of the inventors that removes reference to the '404 Patent. Mr. Clodfelter did not advise the Examiner that these amendments removed his earlier basis for arguing the impropriety of the Examiner's "official notice."

75. Upon information and belief, the '919 Patent is also unenforceable because the inventors or the prosecuting agent of the '919 Patent application ("'919 Applicants") intentionally did not disclose to the United States Patent and Trademark Office ("USPTO") specific information about switching products which were combined with products for extending video signals several hundred feet which were sold or offered for sale prior to the filing date of the '919 Patent. Extension products include the PC Extender Plus which was offered for sale at least as early as November 1991 (DX 20), the PC Expander which was offered for sale at least as early as November 1991 (A4187) and the Extender which was offered for sale at least as early as May 1992 (DX 38). Each of those products was described as including VGA support and transmission of signal 250 feet to 600 feet. Switching products which were offered for sale were the Autoboot Commander 4XP (A4193) and the Autoboot Commander (DX 21). Each of those products was sold or offered for sale by Cybex Corporation, a predecessor of Avocent. At least inventor Mr. Asprey was aware the Autoboot Commander was being combined with extension products prior to the filing date of the '919 Patent but he never provided specific information about those combinations to the USPTO.

76. Based on the foregoing, the '919 Patent is unenforceable based on inequitable conduct due to the '919 Applicants knowingly failing to disclose material information about the chain of pendency of the '919 Patent application and the combination of extension products switching products with the intent to deceive the USPTO into issuing the '919 Patent.

77. Based on Avocent's inequitable conduct, this counterclaim presents exceptional circumstances within the meaning of 35 U.S.C. § 285 and ClearCube is thus entitled to an award of its reasonable attorneys' fees.

## JURY DEMAND

78. ClearCube demands a trial by jury of all issues so triable in this action, including without limitation, those issues raised in the Complaint, Answer, Affirmative Defenses, and Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, ClearCube prays for judgment against Avocent as follows:

a. For dismissal of Avocent's Complaint with prejudice;

b. For a judgment declaring that no claim of the '997 Patent or the '919 Patent, has been infringed directly, contributorily, or by inducement by ClearCube;

c. For a judgment declaring that each and every claim of the '997 Patent and the '919 Patent is invalid and unenforceable;

d. For an award of reasonable attorneys' fees and expenses against Avocent, pursuant to 35 U.S.C. § 285;

e. For ClearCube's costs of suit against Avocent pursuant to 35 U.S.C. § 284; and

f. For such other and further relief as this Court may deem just and proper.

Dated: Friday, September 3, 2004

Respectfully submitted,

By: Russell T. Wong by HP

J. David Cabello
Russell T. Wong
Wong, Cabello, Lutsch,
Rutherford & Brucculeri, L.L.P.
20333 State Hwy. 249, Suite 600
Houston, TX 77070
Telephone: (832) 446-2400
Facsimile: (832) 446-2424

**ATTORNEYS FOR DEFENDANT CLEARCUBE TECHNOLOGY CORPORATION**

**OF COUNSEL:**

Harlan Prater
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0720
Fax: (205) 581-0799

Joseph Cloud
Joseph M. Cloud, P.C.
521 Madison Street
Suite 35801
Huntsville, AL 35801
Tel: (256) 534-0545
Fax: (256) 534-8475

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of "FIRST AMENDED ANSWER OF DEFENDANT CLEARCUBE TECHNOLOGY, INC., AFFIRMATIVE DEFENSES AND COUNTERCLAIMS" was served by fax and first-class mail, postage paid, on the 3rd day of September 2004 on:

James D. Berquist, Esq.
J. Scott Davidson, Esq.
Donald L. Jackson, Esq
Davidson Berquist Klima & Jackson LLP
4501 N. Fairfax Drive, Suite 920
Arlington, Virginia 22203

J. Jeffery Rich., Esq.
Sirote & Permutt, P.C.
305 Church Street,
Suite 800
P.O. Box 18248
Huntsville, Alabama 35804