FILED
 2006 May-10  AM 08:26
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **AVOCENT HUNTSVILLE CORPORATION,** ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Civil Action No. CV-03-S-2875-NE |
| **CLEARCUBE TECHNOLOGY, INC.,** ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Avocent Huntsville Corp. ("Avocent") is the owner of two patents that concern transmission of computer video signals over extended distances: U.S. Patent No. 6,150,997 ("the '997 patent"); and, U.S. Patent No. 6,184,919 ("the '919 patent"). Avocent's suit against defendant, ClearCube Technology, Inc. ("ClearCube"), asserts that ClearCube's computer systems infringe claim 1 of the '997 patent, and claims 1, 6, and 16 through 18 of the '919 patent.[1] *See* 35 U.S.C. § 271.

This court conducted a claim construction hearing on February 22 and 23, 2006, and entered a memorandum opinion and order on March 15, 2006, setting forth its interpretations of the parties' disputed claim terms.[2]

---

[1] Doc. no. 1 (complaint); *see also* doc. no. 125 (Avocent Huntsville's Summary and Background of the Technology Embodied in the Claims of the Patents-in-Suit), at 1.

[2] Doc. nos. 133-34.

The action now is before the court on Avocent's motion for partial summary judgment, seeking a declaration that ClearCube's accused products literally infringe claims 16 through 18 of the '919 patent.[3]

## PART ONE

### *The Disputed Claims*

Claims 16 and 18 of the '919 patent are independent claims, while claim 17 of the same patent is dependent to claim 16.  *Claim 16 of the '919 patent* recites:

> **16.**  A computer video signal communications system for selectively coupling sets of R, G, B computer color video signals from one of a plurality of computers to a separately located color monitor, said system comprising:
>
> a transmitter including:
>
> > switching means for selectively providing a said set of said color video signals from a selected said computer, and
> >
> > a first signal format converter responsive to each said color signal of a said set of color signals from said switching means for converting a signal format of each said color signal from single ended format to a balanced format;
>
> a plurality of sets of twisted pair conductors, each set of said conductors having a first end and second end, with a said first end of each of said sets of conductors receiving a *discrete*

---

[3] Doc. no. 139 (Avocent Huntsville's Motion for Partial Summary Judgment that ClearCube Infringes Claims 16-18 of the '919 Patent).  *See also* doc. no. 145 (ClearCube's Opposition to Avocent's Motion for Partial Summary Judgment of Infringement of Claims 16-18 of the '919 Patent); doc. no. 148 (Avocent Huntsville's Reply in Support of its Motion for Partial Summary Judgment that ClearCube Infringes Claims 16-18 of the '919 Patent).

> color video signal from said transmitter;
>
> a receiver coupled to said second ends of said sets of said twisted pair conductors and including:
>
> a plurality of second signal format converters for converting a said balanced format of each said *discrete* color video signal from each said set of conductors from balanced to unbalanced format; and
>
> signal means responsive to unbalanced format signals from said receiver for coupling color video signals to a color video monitor.[4]

*Claim 17 of the '919 patent* is dependent to claim 16 above, and recites "[a] system as set forth in claim **16** wherein said receiver includes frequency compensation means for boosting a frequency response of at least one said color video signal directly as a function of frequency."[5]

*Claim 18 of the '919 patent* recites:

> **18.**  A computer video signal communications system for selectively coupling a set of R, G, and B computer color video signals from one of a plurality of computers to a separately located color monitor, said system comprising:
>
> a transmitter including:
>
> switching means for selectively providing said set of R, G, and B computer color video signals from a selected said computer, and

---

[4] Doc. no. 139 (Avocent's motion for partial summary judgment), Ex. A, '919 patent, col. 20 line 48 through col. 21 line 7 (emphasis supplied).

[5] *Id.*, col. 21, lines 8-11 (emphasis in original).

> a first signal format converter responsive to each said R, G and B color video signal for converting a signal format of each said R, G and B color video signal from single ended format to a balanced format;
>
> a set of twisted pair conductors for each said balanced format R, G, and B color video signals, each said set of twisted pair conductors having a first end and a second end, with a said first end of each of said sets of twisted pair conductors receiving a *discrete* one of said balanced format R, G, and B color video signals from said transmitter;
>
> a receiver coupled to said second ends of said sets of twisted pair conductors and including:
>
>> frequency compensation means for boosting a frequency response of each said R, G and B color video signal directly as a function of frequency;
>>
>> a plurality of second signal format converters for converting said balanced format of each said R, G and B color video signal from each said set of twisted pair conductors from balanced to unbalanced format; and
>>
>> signal means responsive to siad [sic] unbalanced format signals from said receiver for coupling said R, G and B color video signals to a color video monitor.[6]

### PART TWO

*Factual Background*

Critical events underlying Avocent's motion, and ClearCube's opposition thereto, involve the parties' conduct during discovery. Discovery in this action

---

[6] *Id.*, col. 21 lines 12-44 (emphasis supplied).

commenced on March 8, 2004.[7]  Avocent propounded interrogatories eight days later.[8]  The pertinent part of Interrogatory No. Three requested ClearCube to state the factual and legal bases for the contention that its accused products did not infringe the patents-in-suit.[9]  ClearCube's written response asserted only one basis for non-infringement of claims 16 through 18 of the '919 patent: "ClearCube does not make, sell or use a product that has 'conductors receiving a *discrete* color video signal from said transmitter.'"[10]

Avocent subsequently moved to compel additional responses to its interrogatories,[11] and the motion was granted by an order entered on July 12, 2004.[12] The court specifically instructed ClearCube to provide "full and complete responses" to Interrogatory No. Three, and added that, if ClearCube "does not presently possess information responsive to [Avocent's] interrogatories, [ClearCube] is ORDERED to supplement its responses to the interrogatories *immediately* upon gaining responsive information."[13]  ClearCube's supplemental response to Avocent's interrogatories

---

[7] *See* Fed. R. Civ. P. 26(d); doc. no. 24 (Report of Parties' Planning Meeting) (filed March 8, 2004).

[8] *See* doc. no. 40 (Avocent's memorandum in support of motion to compel).

[9] *See id.*, Ex. A, Avocent's interrogatories, at 5.

[10] *Id.*, Ex. C, ClearCube's responses and objections, at 9 (emphasis supplied).

[11] Doc. no. 39.

[12] Doc. no. 51.

[13] *Id.* (emphasis supplied).

reasserted the same basis for non-infringement of claims 16 through 18 of the '919 patent: "ClearCube does not make, sell or use a product that has 'conductors receiving a *discrete* color video signal from said transmitter.'"[14] There is no evidence of record that, as discovery progressed, ClearCube disclosed additional bases for non-infringement of claims 16 through 18.

Meanwhile, in September 2004, the court entered a Revised Scheduling Order in anticipation of a claim construction hearing.[15] The parties were ordered, among other things, to prepare and file a Joint Claim Construction and Pre-Hearing Statement that included the information specified in Local Patent Rule 4-3 implemented by Judge T. John Ward of the United States District Court for the Eastern District of Texas.[16] That Rule, in turn, required that the Joint Claim Construction and Pre-Hearing Statement include the construction of claim terms, phrases, or clauses on which the parties agreed, as well as each party's proposed construction of disputed claim terms, phrases, or clauses.[17] In compliance with those instructions, the parties filed their Joint Claim Construction and Pre-Hearing

---

[14] Doc. no. 139 (Avocent's motion for partial summary judgment), Ex. D, First Supplemental Responses and Objections, at 11 (emphasis supplied).

[15] Doc. no. 66.

[16] *See id.* at ¶ 3 at 1.

[17] The Patent Rules of the United States District Court for the Eastern District of Texas may be accessed on-line, *available at* http://www.txed.uscourts.gov/Rules/LocalRules/LocalRules.htm.

Statement on December 17, 2004.[18]  With regard to claims 16 through 18 of the '919 patent, ClearCube asserted that the term "discrete," and the phrase "twisted pair conductor," required construction.[19]  ClearCube's proposed constructions were opposed by Avocent.

After a period of delay in this litigation,[20] the claim construction hearing was conducted on February 22 and 23, 2006.  During opening statement, counsel for ClearCube conceded that Avocent's construction of "twisted pair conductor" was due to be adopted by the court.[21]  Therefore, with regard to claims 16 through 18 of the '919 patent, ClearCube's argument rested solely on the term "discrete."  Following the hearing, the court entered a memorandum opinion and order setting forth its construction of disputed claim terms.  With regard to "discrete," the court adopted the construction proposed by Avocent, and rejected the interpretation asserted by ClearCube.[22]  This motion for partial summary judgment followed.

## PART THREE

*Standard of Review*

---

[18] Doc. no. 78.

[19] *See id.* at 14-18.

[20] Among other delays, this court continued the parties' claim construction hearing pending the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).

[21] *See* doc. no. 133 (memorandum opinion), at 24.

[22] *See id.* at 29-41.

7

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment always bears the initial responsibility of informing the court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has discharged its burden, the non-moving party cannot rest upon the pleadings; rather, Fed. R. Civ. P. 56(e) requires the party opposing summary judgment to go beyond the pleadings, and to demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial. *See also Celotex*, 477 U.S. at 324. In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment, and all justifiable inferences are to be drawn in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). *See also, e.g., IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005); *Elekta Instruments v. O.U.R. Scientific International, Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000); *Chiuminatta Concrete Concepts, Inc. v. Cardinal*

*Industries, Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998).

## PART FOUR

*Discussion*

The resolution of a patent infringement claim requires a two-step analytical progression. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*). The first step is that of "claim construction," the interpretation of words used in a patent's claims, "the portion of the patent document that defines the scope of the patentee's rights." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *see also*, *e.g.*, *Rockwell International Corporation v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) ("The first step in any invalidity or infringement analysis is claim construction.") (citations omitted). The second step requires a comparison of each element of the properly construed claim to the device accused of infringing. *See Markman*, 52 F.3d at 976. At this step of the analysis, the plaintiff may establish infringement in either of two ways: it may show that the asserted claim reads literally on the accused device; or it may show infringement under the so-called "doctrine of equivalents." *See, e.g., Becton Dickinson and Company v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d

1570, 1575 (Fed. Cir. 1995) (citing *Becton Dickinson*, 922 F.2d at 796). Under the doctrine of equivalents, every limitation in the claim must be found in the accused device, at least by "substantial equivalent." *Becton Dickinson*, 922 F.2d at 796. Stated more fully,

> An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if "it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). Only if an accused product contains specific structure which meets all limitations of an asserted claim directed to structure, at least equivalently, can that product infringe under the doctrine of equivalents. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (*in banc*), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

*Southwall Technologies*, 54 F.3d at 1579. While claim construction is an issue of law, *see Markman*, 52 F.3d at 970-91, determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See, e.g., Elekta Instruments*, 214 F.3d at 1306.

In this case, Avocent has discharged its initial burden to establish that there is no genuine issue of material fact left to be decided at trial. The parties set forth their claim construction contentions in the Joint Claim Construction and Pre-Hearing Statement, and the court subsequently endeavored to properly construe the claims, resulting in the memorandum opinion and order entered on March 15, 2006. With

regard to claims 16 through 18 of the '919 patent, ClearCube conceded that Avocent's construction of "twisted pair conductors" was due to be adopted. This court also adopted Avocent's construction of the term "discrete," and rejected the interpretation proffered by ClearCube. On the strength of these results, Avocent now submits into evidence a report prepared by its expert witness, whose analysis establishes that every limitation set forth in claims 16 through 18 of the '919 patent also is found in ClearCube's computer products, exactly.[23]

The burden therefore shifts to ClearCube to demonstrate that there is a genuine issue of material fact requiring resolution by trial. ClearCube's response is an example of a syllogism. The major premise of its argument is the (correct) contention that the inventions embodied in claims 16 through 18 of the '919 patent require the use of a "transmitter." The minor premise of ClearCube's argument is the contention that the term "transmitter" must be construed — in view of other claims in the '919 patent, as well as the patent specification — to require the presence of an "amplifier."[24] The conclusion of ClearCube's syllogistic progression is the assertion that Avocent has failed to offer any evidence with respect to the "amplifier" implicit in "transmitter" and, accordingly, its motion for summary judgment must be denied.

---

[23] *See* doc. no. 139 (Avocent's motion for partial summary judgment), Ex. F, Expert Report of Joseph C. McAlexander, III, Regarding Infringement of U.S. Patent Numbers 6,184,919 and 6,150,997.

[24] Claims 16 through 18 of the '919 patent do not expressly require the use of an "amplifier."

The court rejects ClearCube's argument for two, independent reasons: (i) it attempts to reopen claim construction, so that the term "transmitter" may be construed; and (ii) it asserts a previously undisclosed non-infringement contention premised on a favorable construction of that term.

**1.**     *Reopening Claim Construction*

Amendments to claim construction contentions set forth in a claim chart are disfavored. *See, e.g., JSR Corporation v. Tokyo Ohka Kogyo Company*, 2001 WL 1812378, at *5-6 (N.D. Cal. September 13, 2001) (refusing to allow amendment to construction of claim term that was stipulated in the parties' claim chart); *Atmel Corporation v. Information Storage Devices, Inc.*, 1998 WL 775115, at *2-3 (N.D. Cal. 1998) (refusing to allow amendment to claim charts after claim construction). *See also Genetech, Inc. v. Amgen, Inc.* 289 F.3d 761, 774-75 (Fed. Cir. 2002) (district court did not abuse its discretion in refusing to allow an amendment to claim chart, even where there were "ample reasons" for the district court to permit the amendment). The purpose of a claim chart is to force the parties "to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Atmel*, 1998 WL 775115, at *2. Accordingly, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Id.*

The parties filed their Joint Claim Construction and Pre-Hearing Statement on December 17, 2004. Nowhere in that document did ClearCube assert that the term "transmitter" required construction. Instead, with regard to claims 16 through 18 of the '919 patent, only the phrase "twisted pair conductor" and the term "discrete" were identified. ClearCube subsequently abandoned its argument with regard to "twisted pair conductor," and received an unfavorable decision with regard to "discrete." Having suffered these defeats, ClearCube now seeks to reopen the claim construction analysis, in the hope that the "transmitter" device in claims 16 through 18 will be deemed to require, as a matter of law, the presence of an "amplifier." ClearCube's belated attempt to inject this issue is rejected. This court will not reopen the claim construction process simply because ClearCube, having lost its footing at the first step of the infringement analysis, now faces the unattractive prospect of summary judgment.

**2.**   *Sanction for Violation of Discovery Order*

Rule 37(b) of the Federal Rules of Civil Procedure provides that a district court may impose sanctions for failure to comply with discovery orders. *See Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982). District courts enjoy "substantial discretion" in deciding whether and how to impose sanctions under Rule 37(b), *Chudasama v. Mazda Motor Corporation*, 123

F.3d 1353, 1366 (11th Cir. 1997),[25] and an appropriate sanction may include, among other things, the entry of an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B).

During discovery, Avocent propounded an interrogatory seeking the basis for ClearCube's contention that its computer products did not infringe claims 16 through 18 of the '919 patent. When Avocent did not receive a satisfactory response, it filed a motion to compel, and the motion was granted. The court's order entered on July 12, 2004 required ClearCube to provide a full and complete response to Avocent's interrogatory, and added that, if relevant information was then unavailable, ClearCube was to supplement its responses *immediately* upon gaining responsive information. ClearCube disclosed a single basis for non-infringement of claims 16 through 18, premised on the assumption that, unlike Avocent's inventions, ClearCube's computer products did not require the transmission of "discrete" color video signals.

ClearCube's attempt to now assert a non-infringement contention premised on a favorable construction of the term "transmitter" is disingenuous. More importantly,

---

[25] The Federal Circuit applies the law of the pertinent regional circuit when the issue to be decided involves an interpretation of the Federal Rules of Civil Procedure not unique to patent law. *See Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647-48 (Fed. Cir. 1994).

it is in direct violation of this court's discovery order.  ClearCube will be precluded from raising this non-infringement contention at this late stage of the litigation.  *See* Fed. R. Civ. P. 37(b)(2)(B); *Nike Incorporated v. Wolverine World Wide, Inc.*, 43 F.3d 644, 649 (Fed. Cir. 1994) (district court did not abuse its discretion where, as a sanction for failure to provide court-ordered discovery, the offending party was precluded from pursuing a claim of infringement under the doctrine of equivalents) (applying Ninth Circuit law to district court's ruling rendered under Rule 37(b)(2)(B)).

### PART FOUR

*Conclusion*

In accordance with the foregoing, the court finds that Avocent's motion for partial summary judgment is due to be granted.  Claims 16, 17, and 18 of the '919 patent are infringed by the accused devices.  An appropriate order will be entered.

DONE this 10th day of May, 2006.

_____
United States District Judge