FILED

2006 Jun-23  PM 06:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| AVOCENT HUNTSVILLE CORP., <br><br> an Alabama corporation, <br><br> Plaintiff, <br><br> v. <br><br> CLEARCUBE TECHNOLOGY, INC., <br><br> a Texas corporation, <br><br> Defendant. | Civil Action No. 5:03-CV-02875-CLS |

**AVOCENT HUNTSVILLE'S OMNIBUS OPPOSITION
TO CLEARCUBE'S MOTIONS *IN LIMINE***

**AVOCENT HUNTSVILLE CORP.**
by its Attorneys

J. Jeffery Rich
SIROTE & PERMUTT, P.C.
305 Church Street, Suite 800
P.O. Box 18248
Huntsville, Alabama 35804
Tel: (256) 536-1711
Fax: (256) 518-3681

James D. Berquist
J. Scott Davidson
Donald L. Jackson
DAVIDSON BERQUIST JACKSON &
GOWDEY, LLP
4300 Wilson Blvd., Suite 700
Arlington, Virginia 22203
Tel: (703) 894-6400
Fax: (703) 894-6430

## TABLE OF CONTENTS

I.      Dr. Kerr's Testimony ................................................................................................. 1

II.     Infringement Under the Doctrine of Equivalents................................................... 1

III.    Any Evidence That The '404 Patent Was Considered During Prosecution
        of Patents-In-Suit ................................................................................................... 4

IV.     Evidence Of Lost Profits......................................................................................... 10

        A.      Lost Profits.................................................................................................. 10

        B.      Secondary Considerations........................................................................... 11

V.      Evidence of Irreparable Harm................................................................................ 13

VI.     Evidence of Secondary Considerations Of Non-Obviousness............................... 15

VII.    Avocent's Geographic Location, Headquarters, Revenue, and Size ................... 18

VIII.   Validity of Claims 6 and 17 of the '919 Patent .................................................... 19

IX.     ClearCube's Infringement of Claims 16 – 18 Of The '919 Patent ...................... 20

X.      Evidence Relating to Avocent's Prior Patent Litigation........................................ 20

XI.     Evidence Relating to Avocent's Other Litigation................................................... 21

XII.    Evidence Directed To Litigation Conduct .............................................................. 21

XIII.   Evidence of Correspondence Between the Parties.................................................. 22

XIV.    ClearCube's Failure to Produce Documents or Information .................................. 22

XV.     ClearCube's Assertion Of Privilege....................................................................... 23

XVI.    Requests For Relief Not Favorably Acted Upon .................................................... 24

XVII.   Conduct of Third Parties......................................................................................... 25

Avocent Huntsville submits the following Response to the omnibus motion *in limine* filed by ClearCube Technology.  Although several of ClearCube's requests are more accurately characterized as untimely motions for summary judgment, all 17 of ClearCube's *in limine* motions are addressed herein, with each response bearing the number of ClearCube's request:

## I.       DR. KERR'S TESTIMONY

This issue is separately addressed in response to ClearCube's *Daubert* challenge to Dr. Kerr.  Avocent incorporates by reference its opposition to that motion here.

## II.      INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

ClearCube's motion to preclude evidence of infringement under the doctrine of equivalents for the "adapter" claim element should be denied.[1]  Based on the information that has been disclosed by ClearCube and its expert, Avocent does not anticipate the need to assert infringement under the doctrine of equivalents for the "adapter" claim element.  But because ClearCube has continually "hid the ball" from Avocent as to exactly what ClearCube's "adapter" non-infringement arguments are, Avocent opposes ClearCube's motion so that Avocent retains the ability to respond to newly-revealed arguments that may arise at trial.  While ClearCube's expert, Dr. Vaughn, has alleged that ClearCube's products do not have the "adapter," ClearCube has not fully provided its affirmative arguments about the way its accused circuitry works.

In ClearCube's court-ordered supplemental interrogatory responses, ClearCube did *not* assert a non-infringement argument for claim 1 of the '919 patent based on any part of the "adapter" claim language.  (Exh. 1, pp. 10-11).  ClearCube limited its claim 1 non-infringement

---

[1]   Importantly, ClearCube's motion is limited to the "adapter" element.  ClearCube does not dispute that Avocent and its expert have alleged alternative theories of infringement (*i.e.*, literal and doctrine of equivalents) for other claim elements including the "amplifier."

allegations to the "frequency sensitive compensating circuitry."  As for the doctrine of equivalents, ClearCube merely alleged that claim 1 was not infringed because "ClearCube's transmitters do not perform that function or achieve that result" – *i.e.*, the function or result of the of the "frequency sensitive compensating circuitry."  (Exh. 1, p. 11).  Because the Court had ordered ClearCube to provide its "full and complete" non-infringement contentions (*see* D.I. 51), Avocent assumed that ClearCube conceded that its products had the claimed "adapter."

After Avocent's expert, Mr. McAlexander, served his opening expert report on infringement, ClearCube's expert served a rebuttal report that, *for the first time*, alleged that the "adapter" was not found in ClearCube's products.  (Exh. 2, p. 4).  But even Dr. Vaughn's expert report shed no light on how ClearCube contended that its alleged "adapter" circuitry worked in an allegedly non-infringing way.  Dr. Vaughn merely alleged that ClearCube's products do not have it, and do not need it.  (Exh. 2, p. 4).  Dr. Vaughn stated that the so-called common-mode filters "prevent any of the twisted pair conductors from being used as a ground reference."  But there is nothing in the "adapter" claim element that recites a requirement on the "twisted pair conductor."  So Dr. Vaughn's statement about the effect of the common-mode filters was irrelevant to the issue of how ClearCube's alleged "adapter" actually is structured and operates.

That was the last word on ClearCube's "adapter" arguments until ClearCube served the Supplemental Expert Report of Dr. Vaughn on April 24, 2006.  (Exh. 2, Supp. Report).  This report was served on the last day allowed for expert reports, and *after* all of Mr. McAlexander's infringement reports had been served.  Suddenly, this report contains about one-and-a-half pages of single-spaced explanation about why ClearCube's products lack the "adapter."  (Exh. 2, Supp. Report, pp. 5-6).  While this supplemental report contains a great deal more discussion about what ClearCube's "adapter" circuitry does *not* do, it still provides very little affirmative

explanation of what that circuitry does do.  For example, Dr. Vaughn's supplemental report does not explain why the accused "adapter" circuitry can be structured exactly like the "adapter" described in Figure 11 of the '919 patent, but still not be the claimed "adapter."  (Exh. 2, Supp. Report, pp. 5-6).  Instead, Dr. Vaughn's supplemental report focuses on the twisted pair conductors and the alleged effect of the "common-mode filters" – structures that are not even arguably part of the claimed "adapter."   (Exh. 2, Supp. Report, pp. 5-6).  Thus, even as of April 24, 2006, ClearCube had yet to disclose much about the way it contends that its alleged "adapter" is structured and operates.

It is in this context that ClearCube filed the present motion *in limine* to prevent Avocent from making infringement arguments under the doctrine of equivalents.  Given ClearCube's "delay, conceal, and surprise" *modus operandi*, it is entirely possible (if not likely) that ClearCube and its witnesses will unveil at trial new explanations and arguments about the way its alleged "adapter" is structured and works.  If that happens, it would be manifestly unfair to prevent Avocent and its witnesses from responding to those new arguments even if the response involves the doctrine of equivalents.

Based on ClearCube's disclosures to date, Avocent does not anticipate relying on the doctrine of equivalents to prove that ClearCube's products have the claimed "adapter."  But any new trial arguments by ClearCube may invoke the doctrine of equivalents.  It makes no sense to tie Avocent's hands before ClearCube has fully revealed its "adapter" non-infringement arguments.  Accordingly, ClearCube's motion *in limine* to preclude evidence of infringement under the doctrine of equivalents should be denied.

III.    **ANY EVIDENCE THAT THE '404 PATENT WAS CONSIDERED DURING PROSECUTION OF PATENTS-IN-SUIT**

Avocent opposes this motion on the grounds that it misstates controlling aspects of patent law and is designed to distort and suppress key aspects of the evidentiary record in this case. ClearCube makes this request to "simplify" the issues for the jury by ensuring that only ClearCube's side of the dispute is presented.  This is plainly improper.

ClearCube's present motion is in reality an untimely motion for summary judgment and should be denied on that basis alone.  It is entirely inappropriate to ask the Court to make substantive rulings on patent law by way of an *in limine* evidentiary motion, and yet, that is exactly ClearCube seeks to do.

The briefing on the issue of inequitable conduct has taken on a life of its own, with the issues being raised in that briefing bearing little or no connection to the reasons why Messrs. Clodfelter and Phillips made various Patent Office filings.  The patent prosecution story, however, is really quite simple, and if the conduct of Messrs. Clodfelter and Phillips is to be understood, the prosecution record must be evaluated from the standpoint of when they learned that the PTO would not correct the filing date of the '442 application.

Mr. Clodfelter placed the '442 application in the express mail box at the local post office on January 4, 1994.  In light of that mailing, and his certification of January 4 as the express mailing date, Messrs. Phillips and Clodfelter plainly believed that they were entitled to the January 4 filing date.  Indeed, that is precisely what literal application of the 1994 version of PTO Rule 1.10 provided.

The PTO, however, had a different take on the application of that rule.  In its view, the "date in" box on the express mail label was controlling.  The PTO's use of that date-in box was plainly a cause of great controversy – two of the patent law experts in this case have been

required to personally contest the PTO's application of that rule.  In November 1996, the PTO changed Rule 1.10 to expressly state that the "date in" on the express mail label (not the actual mailing date) would be used to established the PTO filing date.  Of course, none of this was known to Messrs. Clodfelter or Phillips in January 1994.  Whether or not they were right, the record establishes that they thought that the '442 application should be treated as filed on January 4, 1994.  It was for this reason that Mr. Phillips asked for a corrected filing date, and continued to ask for that corrected filing date on a number of occasions up to February of 1999.

The record further establishes that Mr. Phillips was never advised that the PTO would not grant the January 4 filing date until May 1999, at the earliest.  Thus, everything Messrs. Phillips and Clodfelter did, or did not do, before May 1999 must be viewed in light of their collective understanding that the PTO would ultimately change the filing date of the '442 application.  It is improper to accuse either individual of lying about the filing date, or making fraudulent misrepresentation concerning that date, before May 1999.  In June 1999, Mr. Clodfelter learned that the PTO would not change the '442 application filing date and within days he withdrew the priority claim to the '404 patent through a Rule 312 amendment.[2]

In addition, the conduct of the individuals prosecuting the application must be evaluated in light of the PTO's citation of the '404 patent in the '442 application on November 20, 1995. Whether or not the conclusions drawn from that citation were correct, and Avocent's briefing demonstrates how the conclusions drawn are fully supported by controlling law and PTO practice rules, the PTO cited the '404 patent as early as November 1995.  Thus, in considering whether Mr. Clodfelter attempted to deceive anybody by not re-citing the '404 patent, the *record as a whole* becomes important – it establishes that the PTO had already considered the '404

---

[2]  The priority claim to the '404 patent had not come up at all in Mr. Phillips' prosecution of the application that became the '997 patent.

patent during the '442 application.  This is the record that helps to explain what Messrs. Clodfelter and Phillips knew and when they knew it, and it is in light of *this complete record* that Mr. Clodfelter's conduct must be evaluated.

The record establishes that the '404 patent was in fact cited by the examiner handling the '442 patent application.  (*See, e.g.,* Exh. 3, Official Action of November 20, 1995 (and PTO Form 892 listing prior art considered by examiner)).  That fact alone precludes the relief ClearCube seeks through its present motion – it makes no sense to ask the Court to help ClearCube prove that the '404 patent was not cited by precluding Avocent from introducing evidence that it was.  While the parties can dispute what affect should be given to the citation of the '404 patent, ClearCube cannot simply dodge the issue through an *in limine* motion. ClearCube should have acknowledged long ago that if the '404 patent was cited in the '442 application, then, by operation of law, there was no obligation to re-cite that patent in the applications that became the '919 and '997 patents.  The patent examiners were obligated to automatically consider that art.  *See, e.g.,* MPEP § 609; *ATD v. Lydall*, 159 F.3d 534, 547 (Fed. Cir. 1998).

Recognizing the seriousness of the dilemma it now faces, ClearCube has re-directed its efforts to explain away the examiner's citation of the '404 patent in the '442 application on the grounds that the '404 patent was cited for "obviousness-type double patenting."  But ClearCube's re-direction fails for two independent reasons.  First, *the '404 patent was in fact cited and applied as prior art* by the examiner handling the '442 patent application.  The examiner handling the '442 application issued two rejections based on the '404 patent – one was a double-patenting rejection *and the second was an obviousness prior art rejection*.  Specifically, the examiner stated:

> In view of the previous [double-patenting] rejection, *it would have*
> *been obvious* at the time that the invention was made to use the
> claimed amplifier in the Patent No. 5,276,404 in the prior art
> mentioned in the present case.

(Avocent's Memo. of No Inequitable Conduct (D.I. 158), Exh. 11, p. 5).  This second rejection is

an obviousness prior art rejection, and is consistent with MPEP § 804 which requires examiners

to issue both rejections when appropriate.

Stated another way, the examiner handling the '442 application cited the '404 patent in

combination with the use of "long conductors between workstation[s]" to route red, green and

blue analog VGA video signals (what the examiner called the "prior art disclosed on pages 1-2 of

the present application").  (Exh. 3, pp. 3-5).[3]  It was upon this combination that the examiner

found the claims of the '442 application to be unpatentable.  This is a classic use of a *prior art*

*reference*.  ClearCube suggests that the examiner's focus on the amplifier of the '404 patent

means that he did not consider the whole reference (ClearCube Memo., attached to ClearCube's

omnibus motion as Exhibit B, p. 5), but it is quite common for examiners to identify only the

portions of a prior art reference on which they rely, and the use of an amplifier having "gain

directly related to frequency of said one video signal" is undeniably the portion of the '404

patent that was most relevant to the claims of the '442 application.  (*See, e.g.,* Exh. 4, Claim 4 of

'404 patent).  Indeed, the examiner handling the '442 application applied the '404 patent as prior

art the same way ClearCube applies it in this action.

The second reason ClearCube's explanation of the Examiner's '404 patent citation fails is

because double-patenting rejections can only be overcome one of two ways: (1) by filing a

---

[3]  As this Court may recall, ClearCube asserts that the inventors committed inequitable
conduct by failing to cite its commercial products which transmit VGA video signals over long
distances.  But as the '442 file history clearly shows, that concept was part of the admitted prior
art.

terminal disclaimer[4] or (2) by distinguishing the claims over the parent patent like an applicant

would do with any other prior art reference. *In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir.

1993). No terminal disclaimer was filed in the '442 application. Thus, option (2) applied and

the '404 patent was properly treated like any other prior art reference. ClearCube's analysis is

once again at odds with the law and Patent Office procedure.

The fact that the '442 application was later identified in the Official Action of March 16,

1996 as a continuation-in-part ("CIP") of the application that became the '404 patent does

nothing to change the fact that the '404 patent was clearly treated as prior art. It is well

established that the claims of a continuation-in-part application are entitled to claim the priority

of the parent only when they are fully supported (disclosed) by that parent. *See* 35 U.S.C. § 120;

*Augustine Medical, Inc. v. Gaymar Indust., Inc.*, 181 F.3d 1291, 1302-03 (Fed. Cir. 1999). Even

parent patents can be cited as prior art. *See* 35 U.S.C. § 102 (e); *Riverwood Int'l Corp. v. R.A*

*Jones & Co., Inc.*, 324 F.3d 1346 (Fed. Cir. 2003).

ClearCube suggests carving up the file history so as to admit the portions of the patent

file histories that support its case, but precluding admission of the portions of the file histories

that support Avocent's case. ClearCube purportedly proposes this solution to avoid confusing

the jury with contradictory evidence.[5] But it is not possible to carve up the three file histories

without rendering them misleadingly incomplete and thereby prejudicing Avocent's ability to

defend against ClearCube's inequitable conduct allegations.

---

[4] A terminal disclaimer is a statement filed by an owner of a patent to disclaim a portion of the patent grant in order to avoid extending the length of that grant through multiple applications directed to similar inventions. *See* MPEP § 1490.

[5] Ironically, it is ClearCube who insists that the inequitable conduct allegations be tried to the jury for an advisory opinion. The confusing interrelationships of the PTO rules governing patent practice and extensive legal analysis interpreting those rules, and the evidentiary problems associated with these inequitable conduct issues, formed part of the basis for Avocent's bifurcation request.

ClearCube's inequitable conduct claim depends on first establishing that the '404 patent was never cited as prior art.  Of course, that "proof" becomes a whole lot easier if Avocent is precluded from introducing evidence that the '404 patent was in fact cited.  ClearCube must also prove that Mr. Clodfelter withheld disclosure of material information with the intent to deceive the PTO.  In the context of the '404 patent, ClearCube must prove, by clear and convincing evidence, that the '404 patent was withheld from the PTO and that Mr. Clodfelter knew that the '404 patent had not been previously cited as prior art.

The citation of the '404 patent in the '442 application denies ClearCube the opportunity to assert that Mr. Clodfelter's failure to submit that patent in the '076 patent application constitutes inequitable conduct.  By law, material known to the PTO cannot be found to be "withheld," *Molins PLC v. Textron Inc*., 48 F.3d 1172, 1185 (Fed. Cir. 1995) ("[w]hen a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner"), and once a reference is cited, it need not be recited in later "child" applications, *see* MPEP § 609.[6]

The citation of the '404 patent in the '442 application forms part of the record in this case and is relevant to understanding what the patent applicants and their counsel had available to consider as they moved forward with the patent application process.  It was the *record as a whole*, including the citation of the '404 patent as in the parent '442 application, that would have guided the decisions made by Mr. Clodfelter and Mr. Phillips.  If part of that record is removed,

---

[6]  In response to the Court's June 15, 2006 Order, ClearCube directed the Court to MPEP § 2004 and suggested that *these* guidelines, not Section 609 of the MPEP, should control.  But ClearCube's argument is wrong on two counts.  First, Rule 609 is a practice rule; Section 2004 of the MPEP offers only practice *tips*.  Second, the MPEP section ClearCube cites is not directed to cases involving parent/child relationships.  For cases involving parent applications, Section 2004 directs the practitioner to consider MPEP § 2001.06(b), which in turn directs the practitioner back to MPEP §609, ***the very section Avocent relies upon***.

as ClearCube requests through its motion, then it becomes impossible to evaluate the conduct of these individuals in proper context.  The intent to deceive must be evaluated in light of the record as a whole.  The preclusion of evidence that may illuminate what Messrs. Clodfelter and Phillips were thinking at the time would prevent that evaluation from occurring and be manifestly unfair to Avocent, especially when the evidence to be excluded provides a good faith explanation for what these men did, or did not do, during the prosecution of these applications that became the patents-in-suit.

For all of the above reasons, Avocent respectfully requests that this Court deny ClearCube's motion and grant Avocent's motion precluding anyone from testifying that the '404 patent was not in fact cited in the '442 application.

## IV.    EVIDENCE OF LOST PROFITS

The arguments ClearCube makes to support its *in limine* motion directed to lost profits, irreparable harm, secondary considerations of non-obviousness, and company size/location are unsupported by fact or law.  Indeed, much of the argument presented has nothing to do with the facts of this case or the procedural history of this litigation.  Confusingly, ClearCube presents this motion in at least four different pieces (ClearCube's item numbers 4, 5 (irreparable harm), 6 (secondary considerations), and 7 (corporate size/location)) and files a separate brief discussing these *same* points.  (*See* ClearCube Motion, Exh. C).  Avocent respectfully requests that this motion, and all of its interrelated subparts, be denied.

### A.    Lost Profits

ClearCube advises this Court that Avocent withheld evidence of its lost profits claim until the eve of trial.  (ClearCube Motion, Exh. C, p. 1).  ClearCube also asserts that Avocent's

claim for lost profits is based on solely on Dr. Kerr who did not analyze the four factors announced in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978).  (*See* ClearCube Memo. pp. 10-11).  But ClearCube is just plain wrong.

ClearCube knows that Dr. Kerr was not asked to provide, and did not provide, a lost profits analysis in this case.  Avocent limited its claim for lost profits to the ClearCube sale to Morgan Stanley.  In that sale, the only two bidders where Avocent and ClearCube.  Accordingly, Avocent asserts that "but for" ClearCube's infringement, there is a reasonable probability that Morgan Stanley would have purchased its products from Avocent.  Avocent's claim has nothing to do with Dr. Kerr's analysis at all, and ClearCube's attack on Dr. Kerr's "lost" profits analysis is inexplicable.

Nor has Avocent concealed this information until the eve of trial as ClearCube asserts.  This whole issue was fully briefed in connection with ClearCube's motion for summary judgment of no lost profits in early 2005 – more than 12 months ago – and again just a couple of months ago.  In any event, Avocent learned that it and ClearCube were the only two bidders for the Morgan Stanley sale on the day it took Morgan Stanley's deposition on October 12, 2004.  If it did not know that fact before, ClearCube learned of it at that deposition.  Nevertheless, and out of an abundance of caution, Avocent supplemented its interrogatory response on that issue on May 3, 2006, while fact discovery in this case was still open.  ClearCube's claims of inexcusable delay and 11th hour surprise are directly contradicted by the record.

### B.       Secondary Considerations

ClearCube also accuses Avocent of failing to produce any evidence relating the secondary considerations of non-obviousness.  Much of ClearCube's argument, however, is directed to the purported failure to identify sales documents by name in Avocent's initial Rule

26(a) disclosures.  Contrary to ClearCube's assertions, Avocent has provided ClearCube with specific evidence relevant to the issue of secondary considerations of non-obviousness including Avocent's incorporation of the patented technology in several of its products, as well as the sales of profit data for those products over the years.  Avocent's evidence on this subject is discussed in detail in connection with ClearCube's *in limine* motion, item number 6, below.

Moreover, Avocent is a large company that generates massive amounts of sales information every day.  So, Avocent's Rule 26(a) initial disclosure appropriately advised ClearCube that Avocent's "engineering, financial and market analysis are available in Huntsville Alabama."  It is not clear from ClearCube's motion what information it feels Avocent concealed, but this disclosure, like the information available, covers a wide variety of information, including information relating to the commercial success of the invention.

As to ClearCube's lengthy criticisms of Avocent's discovery responses, it is difficult to understand how ClearCube could even raise these arguments at this juncture.  At no time did ClearCube seek documents that were not provided, ClearCube never met or conferred with Avocent regarding any insufficient discovery response, and ClearCube never sought the Court's assistance to obtain such discovery.  Rather, ClearCube seeks an Order to preclude the admission of even the information Avocent actually provided, as a discovery sanction.  ClearCube's attacks on Avocent's discovery responses are untimely and without merit.

Under Rule 26(e) of the Federal Rules of Civil Procedure, a "party is under a duty seasonably to amend a prior response to an interrogatory…if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  Thus, "[p]arties need not supplement information otherwise

made known in writing or during the discovery process." *Kotes v. Super Fresh Food Markets, Inc.*, 157 F.R.D. 18, 19 (E.D. Pa. 1994) (emphasis added); *see also* Fed. R. Civ. P. 26(e) (Advisory Committee's notes).

ClearCube's arguments about the alleged failings of Avocent's Initial Disclosures are nothing more than a red herring designed to distract from its own discovery and litigation abuses. Avocent produced the documentary information that Avocent will rely on to show "secondary considerations" of non-obviousness.  Information of secondary considerations was provided to ClearCube through a variety of sources including Avocent initial disclosures, document production, interrogatory responses, and deposition testimony.   ClearCube has no basis to assert that anything was withheld from it.

The same discussion applies equally to ClearCube's criticism of Avocent's disclosures of information relating to the issue of irreparable harm, discussed immediately below in connection with ClearCube's item 5.

## V.      EVIDENCE OF IRREPARABLE HARM

ClearCube's motion should be denied because it is not clear what evidence ClearCube seeks to exclude.  The issue of an injunction, like all such equitable issues, is reserved for the Court.  But ClearCube's motion puts the proverbial cart before the horse to take maximum advantage of the Supreme Court's recent decision in *Ebay Inc. v. Mercexchange, L.L.C.*, 126 S. Ct. 1837, 164 L. Ed. 2d. 641 (2006), that changed the presumption of irreparable harm.

Before the Supreme Court's *Ebay* decision, irreparable harm was presumed when a patent was infringed.  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) ("Irreparable harm is presumed when a clear showing of patent validity and infringement has been made."); *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573

(Fed. Cir. 1983).  Thus, no evidence related to irreparable harm was required to obtain an injunction.  But after *Ebay*, the courts will need to consider, among other things, whether or not the patent owner manufactures the patented article, *see Ebay*, 126 S. Ct. at  1840.  Where, as here, the patent owner makes and sells the patented invention in competition with the infringer, the failure to issue an injunction would render the patent grant a hollow right, subject to compulsory licensing to anyone who has an interest in the patent.[7]  Avocent *does* make the patented article, and although evidence of that manufacturing is relevant to irreparable harm, it is also relevant to a number of other issues (such as lost profits, demand for the patented invention, and commercial success of the patented invention).  Excluding it as "evidence related to irreparable harm," as ClearCube suggests, goes too far.  Avocent intends to present evidence that it makes and sells the patented technology, and that it does indeed compete with ClearCube.  That same information is relevant to quantifying damages in this case.  *E.g. Georgia-Pacific Corp. v. U.S. Plywood Co*., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factors to consider in determining proper reasonable royalty rate).

Moreover, contrary to ClearCube's motion, ClearCube never served any discovery request on Avocent asking for evidence of "irreparable harm."  (ClearCube's Motion, Exh. C., p. 8).[8]  ClearCube makes this assertion without identifying any specific discovery requests.  It is not surprising that ClearCube never served any "irreparable harm" discovery requests because, prior to *Ebay*, irreparable harm was presumed without further evidence.  ClearCube's motion is

---

[7]  The Court's holding in *Ebay*, however, is not so expansive.  It addressed only the limited issue of whether irreparable harm should be *presumed* in patent infringement cases.  Indeed, the patent in *Ebay* was owned by a company that did not make products, and thus did not compete with the infringer.  Those are not the circumstances here.

[8]  Similarly, Rule 26 initial disclosures are limited to the disclosure of information relating to claims and defenses.  Rule 26 does not extend to disclosure of alleged "irreparable harm."

nothing more than a procedural game designed to take advantage of the very recent Supreme Court *Ebay* decision. Accordingly, ClearCube's motion *in limine* directed to evidence of irreparable harm should be denied.

## VI.   EVIDENCE OF SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS

Secondary considerations, such as commercial success, long felt but unsolved needs, and failure of others, may be utilized to rebut an allegation that an invention was obvious. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1965); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1370 (Fed. Cir. 2003). As support for its request that Avocent be precluded from presenting evidence of secondary considerations of non-obviousness, such as commercial success and the adoption of the patented technology as the industry standard, ClearCube advises the Court that Avocent has provided no evidence of secondary consideration. ClearCube's assertion, however, is demonstrably wrong.

In response to ClearCube's interrogatory number 9, Avocent has produced detailed, factual disclosures to support its contention. These disclosures include identifying the total commercial sales of products incorporating the patented technology. (*See* Exh. 5, Avocent's Response To ClearCube Interrogatory No. 9). These figures disclose facts supporting Avocent's assertion of commercial success of the patented products.

Additionally, in response to document production requests, Avocent provided even more detailed accountings of sales that establish commercial success of the patented technology. These include: Extension Product sales records (*see* Plaintiff Exh. 21, attached at Exh. 6; Longview sales records, *see* Plaintiff Exh. 26, attached at Exh. 7); press release announcing new PC Extender line (*see* Plaintiff Exh. 42, attached at Exh. 8); press release announcing record 1996 first quarter sales and net income (*see* Plaintiff Exh. 43, attached at Exh. 9); and press

release announcing new LongView KVM Extender (*see* Plaintiff Exh. 44, attached at Exh. 10). ClearCube has long been in possession of these facts which further support commercial success of the patented technology.

Moreover, Avocent's Senior Vice President of Engineering, Mr. Christopher Thomas, testified that his first assignment as an engineer at Avocent was to incorporate the patented extension technology into a product called the 4XP system.  (Exh. 11, pp. 6:17-8:15).  Since then, this technology has been incorporated into all of Avocent's other analog video, extended distance products.  The proliferation of this technology within Avocent further supports the commercial success of the patented technology.

The "failure of others" is another of the secondary considerations of non-obviousness. During discovery, ClearCube obtained deposition testimony establishing that others in the same field failed to solve the problem solved by the inventors of the '919 and '997 patents.  For example, Mr. Robert Asprey testified about the industry belief that high-frequency analog video signals could not be sent over twisted pairs, saying that "that was the standard engineer's view of it.  And we talked to a lot of engineers about it, and they said, 'It won't work.  Why are you wasting your time?'"  (Exh. 12, Asprey Tr. 92-93).  Mr. Remigius Shatas also testified to the idea that sending analog video over twisted pair was previously thought to be impossible, testified that, "a lot of people had tried KVM extension over twisted pair.  And at a certain distance point and a certain monitor refresh rate, they couldn't use it anymore."  (Exh. 13, Shatas Tr. 143).

ClearCube clearly has been provided with the factual basis of secondary considerations of non-obviousness.  Under Rule 26(e) of the Federal Rules of Civil Procedure, a "party is under a duty seasonably to amend a prior response to an interrogatory…if the party learns that the

-16-

response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  Thus, "[p]arties need not supplement information *otherwise made known in writing or during the discovery process*."  *Kotes v. Super Fresh Food Markets, Inc.*, 157 F.R.D. 18, 19 (E.D. Pa. 1994) (emphasis added); Fed. R. Civ. P. 26(e) (advisory committee's notes).  Avocent has complied with the disclosure provisions of Rule 26 because the factual bases for secondary considerations of non-obviousness were made known to ClearCube through interrogatory responses, document production, and deposition testimony. Therefore, there is no reason to exclude presentation of evidence on secondary considerations.

Even if this Court believes that Avocent should have further supplemented its response to interrogatories, total exclusion of secondary consideration evidence would not be the proper response.  Exclusion of evidence is "an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence."  *Tracinda Corp. v. DiamlerChrysler AG*, 362 F.Supp.2d 487, 506 (D. Del. 2005) (citations and internal quotation marks omitted).  Because the evidence has long been disclosed, ClearCube's characterization of secondary considerations being brought at the "eleventh hour" is frankly ridiculous.  Avocent's actions certainly do not rise to the level of an ambush on the eve of trial requiring the exclusion of evidence as in the cases cited by ClearCube.  *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366 (M.D. Ala. 2001) (excluding personnel file specifically requested by plaintiff but not produced by defendant until its reply brief to plaintiff's response to motion for summary judgment); *Finley v. Marathon Oil Co*., 75 F.3d 1225, 1230-31 (7th Cir. 1996) (plaintiff was precluded from introducing two pieces of evidence – a chart

prepared by its expert witness and a physical piece of evidence purporting to rebut the testimony

of defense experts – because both were "disclosed only a few days before the start of the trial.").

Accordingly, ClearCube's motion should be denied.

## VII.   AVOCENT'S GEOGRAPHIC LOCATION, HEADQUARTERS, REVENUE, AND SIZE

ClearCube asks this Court for an Order precluding Avocent from presenting any evidence

as to Avocent's geographic location, location of its headquarters, its revenue, its size or the

number of its employees.  Avocent opposes this request.

Avocent intends to present its sales numbers of the products which include the patented

technology and strenuously opposes any effort to conceal its name from the jury, or require its

witnesses to conceal the fact that they live and work in the Huntsville area.  Similarly, it is proper

for Avocent to present some evidence relating to its size and its success.  *See Loberg v. Gordon

Flesch Co., Inc*., 2004 U.S. Dist. LEXIS 27200, *6 (N.D. Ill. 2004) (attached at Exh. 14)

(denying motion to prevent plaintiff from referring to defendant as "foreign," "out of state," or

"Wisconsin" company, despite defendant's instance that doing so would prejudice the jury);

*Sugical Laser Tech., Inc. v. Laser Industs., Ltd*., 1993 U.S. Dist. LEXIS 13918, *28-29 (E.D. Pa.

1993) (attached at Exh. 15) (affirming trial court's decision to allow plaintiff to refer to its

client's local headquarters, defendant's foreign headquarters, and relative size of companies,

despite defendant's argument that this was an appeal to regional and financial prejudices).  Like

it or not, these are simply facts of the case and both parties must live with them.

The role that the patented technology played in Avocent's history and growth is

inextricably linked to the overall proliferation of the patented technology throughout Avocent's

product lines.  Moreover, acceptance of products having Avocent's patented technology allowed

Avocent to gain access to new customers and markets.  All of this information goes to the commercial success of the patented inventions, and as a natural byproduct, reveals information about Avocent's size, location, etc.  None of this is improper.  Moreover, the size of a company, in terms of its manufacturing capacity, goes to the lost profits issue.  A company must be "large enough" to have made the sales in order to successfully collect lost profits for those sales.

Avocent, of course, has no intention of using these facts to unfairly bias the jury.  But this does not mean that the jury should be shielded from these facts solely based on ClearCube's irrational fear of reality.  Thus, ClearCube's motion should be denied.

## VIII.   VALIDITY OF CLAIMS 6 AND 17 OF THE '919 PATENT

Avocent is obligated to refuse ClearCube's proffered stipulation as contrary to law, and opposes ClearCube's effort to preclude the admission of evidence directed to the validity of claims 6 and 17 of the '919 patent.

While it is true that if an independent claim is valid over the prior art, then the claims that depend from that claim are also valid, the reverse is not true.  By definition, dependent claims such as claims 6 and 17 of the '919 patent simply add further elements or features to that claimed in the independent claim from which they depend.  For example, if independent claim 1, which requires elements A, B and C, is valid, then dependent claim 6, which adds feature D, is always also valid.  The validity of claim 6 is established by the validity of claim 1 from which it depends.  However, if claim 1 is not valid over the prior art, claim 6 may nevertheless be valid because it adds another feature or element.  Thus, ClearCube's offer represents a Trojan horse in which it gives up nothing in order to secure a stipulation that Avocent will not present any validity arguments directed to dependent claims 6 and 17.

Accordingly, Avocent is compelled to refuse ClearCube's proffered stipulation, and thus, opposes ClearCube's efforts to preclude Avocent from presenting evidence directed to the validity of claims 6 and 17 of the '919 patent.

## IX.   CLEARCUBE'S INFRINGEMENT OF CLAIMS 16 – 18 OF THE '919 PATENT

Avocent opposes ClearCube's motion to preclude the admission of evidence directed to its infringement of claims 16-18 of the '919 patent.  On May 10, 2006, this Court entered partial summary judgment that ClearCube infringes claims 16-18 of the '919 patent.  Since that time, ClearCube has continued to make, sell, and use those same products which have been adjudged to infringe.  ClearCube's decision to continue making, selling, and using these products is relevant to the jury's evaluation of Avocent's allegation that ClearCube willfully infringes its patents.  As of at least May 10, 2006, ClearCube has no reasonable basis to continue making, selling, and using the products this Court found to infringe.  This fact is plainly relevant to the issue of willful infringement.  *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp*., 383 F.3d 1337 (Fed. Cir. 2004) (*en banc*) ("Determination of willfulness is made on consideration of the totality of the circumstances," including an affirmative duty to avoid infringing a known, presumptively valid patent).  ClearCube's motion should be denied as an improper attempt to limit highly material and relevant evidence of willful infringement.

## X.   EVIDENCE RELATING TO AVOCENT'S PRIOR PATENT LITIGATION

At this point, Avocent does not intend to affirmatively offer evidence relating to its prior patent litigation.  But Avocent obviously has not yet heard ClearCube's cross-examination of Avocent's witnesses.  For example, ClearCube may attempt to suggest that Avocent singled-out ClearCube when it sued for patent infringement.  Avocent may properly rebut that suggestion by

explaining to the jury that it has also sued other companies for patent infringement.  There are perhaps many other scenarios in which ClearCube may introduce or elicit testimony that would call for disclosure of Avocent's prior patent litigation.  Avocent opposes ClearCube's attempt to hamstring Avocent when evidence of prior patent litigation may be needed to rebut an express or implied assertion.  Thus, Avocent opposes ClearCube's motion to preclude evidence of prior patent litigation.

## XI.    EVIDENCE RELATING TO AVOCENT'S OTHER LITIGATION

This ClearCube motion is simply a broader category of litigation that was the subject of ClearCube's motion number 10.  As such, the same arguments apply in opposing ClearCube's motion.  Avocent opposes this ClearCube motion because evidence of other litigation may be needed to properly rebut an implied or express assertion that, for example, ClearCube has been unfairly singled-out for litigation.

## XII.   EVIDENCE DIRECTED TO LITIGATION CONDUCT

Conduct in litigation is one of the factors to be considered in evaluating whether infringement was willful.  *Knorr-Bremse*, 383 F.3d at 1343 (citing *Read Corp. v. Portec, Inc*., 970 F.2d 816, 827 (Fed. Cir. 1992) (one of the factors to consider in a willfulness determination is "the infringer's behavior as a party to the litigation.")).  Here, there is plenty of litigation misconduct on ClearCube's part to support a finding of willful infringement.  First, ClearCube tried to scare Avocent off by aggressively accusing Avocent of misusing its patents.  Because an infringement assertion cannot, by law, constitute patent misuse, this Court dismissed ClearCube's misuse allegation.  Thereafter, ClearCube tried to thwart Avocent's case preparation by refusing to disclose the basis for asserting that the patents-in-suit were invalid, not infringed,

and "unenforceable."  Accordingly, Avocent was forced to ask this Court for an Order compelling that disclosure.

Later, and after this Court construed the disputed terms of the patents-in-suit, ClearCube attempted to spring previously undisclosed non-infringement contentions.  In response, this Court sanctioned ClearCube for failing to earlier disclose its contention and found that ClearCube had waived the previously undisclosed non-infringement contention.  Although the above list is not exhaustive, it does shed light on ClearCube's litigation conduct which is relevant to determining whether ClearCube's infringement has been willful.  *See Knorr Bremse*, 383 F.3d 1337; *Read Corp.,* 970 F.2d at 827.  For these reasons, Avocent opposes ClearCube's motion.

## XIII.   EVIDENCE OF CORRESPONDENCE BETWEEN THE PARTIES

To the extent evidence of this type reflects ClearCube's litigation misconduct or ClearCube's failure to obtain exculpatory advice of counsel, it goes to the question of willful infringement and should be admissible for the same reasons described in connection with item number 12, above.

## XIV.   CLEARCUBE'S FAILURE TO PRODUCE DOCUMENTS OR INFORMATION

As noted in connection with item number 12, above, litigation conduct is relevant to the question of willful infringement.  Accordingly, and for the same reasons expressed in opposing ClearCube's request number 12, Avocent opposes ClearCube's motion.

In addition, when coupled with its item number 15, discussed below, ClearCube appears to be establishing a way to avoid having to explain to the jury how it satisfied its duty to avoid infringing the patents-in-suit *without* obtaining exculpatory advice of counsel.  The existence of such counsel is central to the issue of willful infringement and its one of the nine itemized factors

to be considered in deciding that issue.  *See Knorr Bremse*, 383 F.3d 1337; *Read Corp.,* 970 F.2d at 827.  Indeed, prior to *Knorr-Bremse,* the lack of an exculpatory opinion, or the refusal to produce that opinion, resulted in the presumption that the infringement was willful.  The Federal Circuit eliminated that presumption in *Knorr-Bremse*, but it is still one of the key factors to be considered.

Here, ClearCube has stated that it obtained no advice of counsel as to the patents-in-suit. (*See* Exh. 16, ClearCube response to interrogatory number 4).  ClearCube never supplemented this interrogatory response, even after this Court found that ClearCube infringed at least claims 16-18 of the '919 patent.  Further, ClearCube provided a withheld document list, but no advice of counsel relating to the patents-in-suit was identified on that list.  Accordingly, Avocent opposes ClearCube's present motion on the grounds that the evidence to be precluded includes evidence relevant to litigation conduct and to ClearCube's failure to obtain or produce exculpatory advice of counsel.

## XV.   CLEARCUBE'S ASSERTION OF PRIVILEGE

Avocent opposes this motion for the reasons stated in connection with item number 14, directly above.  It is well-established that the assertion of a privilege or work product protection should not be used as both a sword and a shield.  *See In re Echostar Comm. Corp*., 2006 U.S. App. LEXIS 11162 (Fed. Cir. 2006) (attached at Exh. 17).   To the extent that ClearCube seeks to use the present motion to conceal the existence of an undisclosed or un-produced opinion letter or other exculpatory advice of counsel, Avocent opposes that motion.  If ClearCube intended to rely upon the advice of counsel as a defense to Avocent's charge of willful infringement, it was obligated to identify that opinion in its interrogatory response and to produce copies of that counsel for Avocent's review.  *Echostar*, 2006 U.S. App. LEXIS 11162 at

p. 9 (requiring disclosure of all "documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter" and all attorney work-product documents that "discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client").   Having opted against that disclosure, ClearCube cannot now suggest that it did in fact obtain such counsel.

## XVI.   REQUESTS FOR RELIEF NOT FAVORABLY ACTED UPON

This motion raises the same issues as ClearCube's item number 12 above.  Because litigation conduct is relevant to the question of willful infringement, Avocent opposes this motion too.  *Knorr-Bremse*, 383 F.3d at 1343 (citing *Read Corp.*, 970 F.2d at 827 (one of the factors to consider in a willfulness determination is "the infringer's behavior as a party to the litigation.")).

Avocent may also cross-examine ClearCube's technical expert witness on the claim construction used to determine non-infringement and/or invalidity.  If the expert was not using the Court's (and only the Court's) claim construction in reaching his opinions, the jury needs to know that information to assess the weight that should be given to that expert's testimony.  It is no secret that Avocent believes Dr. Vaughn has used claim constructions that are at odds with the Court's claim constructions.  In many instances, Dr. Vaughn has used a construction that was advocated by ClearCube, but not adopted by the Court.  Avocent should be able to cross-examiner Dr. Vaughn using both the Court's *Markman* claim construction ruling *and* ClearCube's proposed claim constructions to expose errors and biases in Dr. Vaughn's analyses.

Thus, Avocent opposes ClearCube's motion *in limine* to preclude evidence of motions or other requests for relief filed by ClearCube that were not favorably acted upon by the Court.

## XVII.  CONDUCT OF THIRD PARTIES

Avocent opposes this motion on the grounds that the conduct of third parties may indeed be relevant to the issues in this case.  As noted above, ClearCube takes the position that Avocent has not presented any evidence to show that the patented invention has been adopted as the industry standard.  The adoption of the invention as the industry standard is relevant to proving the existence of secondary considerations of non-obviousness, *see In re Hayes Microcomputer Products, Inc. Patent Litigation*, 982 F.2d 1527, 1540 (Fed. Cir. 1992), as well as demand for the patented invention.  *Hayes Microcomputer*, 982 F.2d at 1540; *Graham*, 383 U.S. at 17.

In this case, Avocent has identified the Raritan Cat5 Reach, Cyclades AlterPath, and Magenta MultiView products as incorporating the technology claimed by the '919 patent.  (*See* Exh. 18, Avocent's Second Supplemental Interrogatory Response, p. 2).  Therefore, the activities of at least these three non-parties are relevant to the issues pending in this case and ClearCube's motion to preclude evidence of those activities should be denied.

Dated:  June 23, 2006                          **AVOCENT HUNTSVILLE CORP.**
                                               by its Attorneys


                                               _/s/ Donald L. Jackson_____
                                               J. Jeffery Rich
                                               SIROTE & PERMUTT, P.C.
                                               305 Church Street, Suite 800
                                               P.O. Box 18248
                                               Huntsville, Alabama 35804
                                               Tel: (256) 536-1711
                                               Fax: (256) 518-3681

                                               James D. Berquist
                                               J. Scott Davidson
                                               Donald L. Jackson
                                               DAVIDSON BERQUIST JACKSON &
                                               GOWDEY, LLP
                                               4300 Wilson Blvd., Suite 700

Arlington, Virginia 22203
Tel: (703) 894-6400
Fax: (703) 894-6430

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on June 23, 2006, the foregoing "Avocent Huntsville's Omnibus Opposition to ClearCube's Motions *In Limine*" was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joseph M. Cloud
Joseph M. Cloud, P.C.
521 Madison St., Suite 102
Huntsville, Alabama 35801

Russell T. Wong
Wong, Cabello, Lutsch, Rutherford & Brucculeri, LLP
20333 SH 249, Suite 600
Houston, Texas 77070

Harlan I. Prater, IV
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203

J. David Cabello
Wong, Cabello, Lutsch, Rutherford & Brucculeri, LLP
20333 SH 249, Suite 600
Houston, Texas 77070

_/s/ Donald L. Jackson_____
Donald L. Jackson

# Attachment A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| AVOCENT HUNTSVILLE CORP.,<br><br>        an Alabama corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>CLEARCUBE TECHNOLOGY, INC.,<br><br>        a Texas corporation,<br><br>        Defendant. | Civil Action No. 5:03-CV-02875-CLS |

**DECLARATION OF DONALD L. JACKSON IN SUPPORT OF
AVOCENT HUNTSVILLE'S OMNIBUS OPPOSITION TO
CLEARCUBE'S MOTIONS *IN LIMINE*__**

I, Donald L. Jackson, hereby declare as follows:

1.        I am a partner with Davidson Berquist Jackson & Gowdey, LLP and counsel in this action to Plaintiff Avocent Huntsville Corp.

2.        Attached hereto as Exhibit 1 is a true and correct copy of excerpts from ClearCube's Supplemental Interrogatory Responses dated July 23, 2004.

3.        Attached hereto as Exhibit 2 is a true and correct copy of excerpts from the September 20, 2004 Expert Report of Gregg. L. Vaughn, Ph.D., and excerpts from the April 24, 2006 Supplemental Expert Report of Gregg L. Vaughn, Ph.D.

4.        Attached hereto as Exhibit 3 is a true and correct copy of an Official Action dated November 20, 1995 from the '442 application prosecution history.

5.        Attached hereto as Exhibit 4 is a true and correct copy of United States Patent No. 5,276,404 ("the '404 patent").

6.      Attached hereto as Exhibit 5 is a true and correct copy of Avocent's Supplemental Responses to ClearCube's Interrogatory Nos. 2, 9, and 10 dated May 17, 2004.

7.      Attached hereto as Exhibit 6 is a true and correct copy of Plaintiff Trial Exhibit 21 ("Extension Product sales records").

8.      Attached hereto as Exhibit 7 is a true and correct copy of Plaintiff Trial Exhibit 26 ("Longview sales records").

9.      Attached hereto as Exhibit 8 is a true and correct copy of Plaintiff Trial Exhibit 42, various press releases.

10.      Attached hereto as Exhibit 9 is a true and correct copy of Plaintiff Trial Exhibit 43, a press release announcing 1996 first quarter sales and net income.

11.      Attached hereto as Exhibit 10 is a true and correct copy of Plaintiff Trial Exhibit 44, a press release announcing a new LongView KVM Extender product.

12.      Attached hereto as Exhibit 11 is a true and correct copy of excerpts from the May 14, 2004 deposition transcript of Mr. Christopher Thomas.

13.      Attached hereto as Exhibit 12 is a true and correct copy of excerpts from the July 15, 2004 deposition transcript of Mr. Robert Asprey.

14.      Attached hereto as Exhibit 13 is a true and correct copy of excerpts from the August 5, 2004 deposition transcript of Mr. Remigius Shatas.

15.      Attached hereto as Exhibit 14 is a true and correct copy of *Loberg v. Gordon Flesch Co., Inc*., 2004 U.S. Dist. LEXIS 27200 (N.D. Ill. 2004).

16.      Attached hereto as Exhibit 15 is a true and correct copy of *Sugical Laser Tech., Inc. v. Laser Industs., Ltd*., 1993 U.S. Dist. LEXIS 13918 (E.D. Pa. 1993).

17.     Attached hereto as Exhibit 16 is a true and correct copy of excerpts from ClearCube's Supplemental Responses to Avocent's First Set of Interrogatories dated July 23, 2004.

18.     Attached hereto as Exhibit 17 is a true and correct copy of *In re Echostar Comm Corp.*, 2006 U.S. App. LEXIS 11162 (Fed. Cir. 2006).

19     Attached hereto as Exhibit 18 is a true and correct copy of excerpts from Avocent's Second Supplemental Interrogatory Responses dated May 3, 2006.

20.     I declare under penalty of perjury that the foregoing is true and correct.


Dated:  June 23, 2006

Donald L. Jackson